UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOYCE M. STEVENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20 CV 1147 ACL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

Plaintiff Joyce M. Stevens brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Stevens' severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I.   Procedural History

Stevens filed her application for benefits on December 28, 2017.  (Tr. 161.)  She

claimed she became unable to work on July 14, 2017—the date she sustained an injury at work—due to fibromyalgia, diabetes, acid reflux, sleep apnea, neuropathy in feet, osteoarthritis, shoulder problems, right arm and hand problems, hypertension, neck and back pain, high cholesterol, and depression. (Tr. 210.) Stevens was 55 years of age on her alleged onset of disability date. Her application was denied initially. (Tr. 74-78.) Stevens' claim was denied by an ALJ on February 24, 2020. (Tr. 11-24.) On July 28, 2020, the Appeals Council denied Stevens' claim for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Stevens argues that the ALJ "failed to properly evaluate RFC." (Doc. 28 at 4.)

## II. The ALJ's Determination

The ALJ first found that Stevens meets the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 13.) She stated that Stevens has not engaged in substantial gainful activity since her alleged onset date. *Id.* In addition, the ALJ concluded that Stevens had the following severe impairments: fibromyalgia; mild degenerative arthritis of the sacroiliac ("SI") joints and hips; moderate osteoarthritis of the thoracic spine; morbid obesity; status post right carpal tunnel release; acromioclavicular arthropathy with small partial supraspinatus tear, right shoulder; cervicalgia/disc herniation, C5-6, C6-7; mild lumbar spondylosis; and moderately severe osteoarthritis of the left knee. (Tr. 13-14.) The ALJ found that Stevens did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15.)

As to Stevens's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could never climb ladders, ropes, or scaffolds and she could only occasionally climb ramps and stairs. The claimant could only occasionally stoop, crouch, and crawl and she could never kneel. The claimant is limited to only occasional overhead reaching, push[ing] or pull[ing] bilaterally, and she could engage in no more than frequent handling and fingering.

(Tr. 16-17.)

The ALJ found that Stevens was unable to perform her past relevant work, but was capable of performing other work existing in substantial numbers in the national economy. (Tr. 22.) The ALJ therefore concluded that Stevens was not under a disability, as defined in the Social Security Act, from July 14, 2017, through the date of the decision. (Tr. 24.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on January 22, 2018, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.

*Id.*

## III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Stevens argues that the ALJ erred in determining her RFC. Specifically, she challenges the ALJ's evaluation of the medical opinion evidence.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).   Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

The ALJ determined that Stevens had the RFC to perform light work, with the additional limitations: no climbing ladders, ropes, or scaffolds; no kneeling; occasionally climbing ramps and stairs; occasionally stooping, crouching, and crawling; occasional overhead reaching, pushing, or pulling bilaterally; and no more than frequent handling and fingering.   (Tr. 16-17.)

In determining Stevens' RFC, the ALJ considered the medical evidence of record, including the medical opinion evidence.   Stevens argues that the ALJ erred in evaluating the opinions of Drs. Michael O'Day, D.O.; David Robson, M.D.; James Coyle, M.D.; and Andrew Wayne, M.D.

For claims like Stevens', filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).  However, the rules make clear that supportability and consistency are the "most important factors," and therefore, an ALJ must explain how she considered these factors in the decision.  20 C.F.R. § 404.1520c(b)(2).

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

A summary of the medical evidence at issue is provided below:

Stevens saw orthopedist Dr. Wayne on August 18, 2017, upon the referral of her employer's workers' compensation carrier. (Tr. 363.) Stevens had fallen down stairs while working as a nurse on July 14, 2017, and struck her right knee, right hand, and right side of her body on the steps. *Id.* Stevens reported pain in her right shoulder/upper back, right hand, and right knee; numbness in the right arm; tingling in the right hand; pain in her knee with walking; and pain in the right upper trunk and extremity while writing. *Id.* She reported a history of upper back pain due to fibromyalgia, but indicated that the pain in the right neck and upper thoracic region had been a lot worse since her injury. *Id.* On examination, Stevens was tender over the right lower cervical paraspinals, right upper trapezius, right upper rhomboids, and right upper shoulder region with palpation; her neck motion was mildly limited for extension; she had moderately restricted internal rotation to the right shoulder and markedly limited internal rotation to the right shoulder due to pain. (Tr. 364.) Dr. Wayne ordered an MRI of the cervical spine and right shoulder and prescribed pain medication. (Tr. 362.) He restricted Stevens to "4 hour per day sedentary duty with no lifting over 5 pounds." *Id.* Stevens returned for follow-up on August 28, 2017, after undergoing MRIs. (Tr. 366.) The MRI of the cervical spine revealed a central and left-sided disc herniation at C5/6 extending toward the left C6 root and a smaller central protrusion at C6/7. (Tr. 367.) The MRI of the right shoulder revealed a small focal area of supraspinatus intrasubstance signal at the insertion suggestive of a small partial incomplete tear without retraction. *Id.* Stevens reported that her shoulder pain was a seven out of ten and her neck pain was an eight out of ten. *Id.* On examination, Dr. Wayne noted Stevens' neck motion was moderately limited for flexion, extension, and bilateral rotation; tenderness in the right lower cervical paraspinals, right upper trap, and right rhomboid; and tenderness with

palpation of the right shoulder.  (Tr. 367.)  Dr. Wayne administered trigger point injections.  (Tr. 366.)  He imposed the following work restrictions: lifting no more than five pounds; four-hour work days; avoid right arm overhead motions; and may alternate between sitting and standing periodically.  *Id.*  Dr. Wayne continued these work limitations in September 2017.  (Tr. 373, 376.)

Stevens saw orthopedic surgeon Dr. Coyle on October 24, 2017, for evaluation of her cervical spine upon referral of her workers' compensation insurer.  (Tr. 737.)  Stevens complained of continuous burning and pain in the cervical region despite undergoing trigger point injections and an epidural steroid injection.  *Id.*  Dr. Coyle noted that Stevens was scheduled for right carpal tunnel surgery and right shoulder surgery.  (Tr. 737-38.)  Upon examination, Stevens had about sixty percent of normal cervical rotation to the right and left; bilateral trapezius tenderness; pain at the base of the neck on the right side and no pain on the left side; normal strength and range of motion of her left upper extremity; she was able to elevate her right shoulder to about ninety degrees but had pain in external rotation; she had global weakness of her left arm and hand; and diffuse numbness in her right hand.  (Tr. 738.)  Dr. Coyle diagnosed Stevens with cervicalgia, and left-sided C5-6 and C6-7 cervical disc herniations with no left-sided symptoms.  *Id.*  Dr. Coyle stated that symptoms in the right upper extremity can be caused by left-sided disc herniations, "however, this is an atypical finding."  *Id.*  Dr. Coyle noted that Stevens had no symptoms on the left side.  *Id.*  He recommended that Stevens undergo cervical spine physical therapy and follow-up with Dr. Wayne.  (Tr. 738-39.)

Stevens saw Dr. Wayne on December 4, 2017, at which time she reported that she had undergone physical therapy for her neck and felt like it did not help her symptoms.  (Tr. 382.)  She complained that her neck was getting worse.  *Id.*  On examination, Stevens' neck motion

was mildly limited for flexion and right rotation and moderately limited for extension and left rotation, with pain mainly with left rotation and flexion; and she was "quite tender" in the right mid-to-low cervical paraspinals and right upper trapezius.  (Tr. 383.)   Dr. Wayne noted that Dr. Coyle "does not feel that [Stevens] is a surgical candidate regarding her neck."   (Tr. 382.)   Dr. Wayne stated that he felt that Stevens "has plateaued regarding her neck."  *Id*   He continued Stevens' pain medications, and indicated she had no work restrictions for her neck*.*   (Tr. 384.)

On March 28, 2018, state agency medical consultant Dr. O'Day expressed the opinion that Stevens could occasionally lift or carry twenty pounds and frequently lift or carry ten pounds; stand or walk a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; push or pull an unlimited amount; frequently balance, stoop, and kneel; and occasionally crouch, crawl, and climb.   (Tr. 70.)

Stevens returned to Dr. Coyle for follow-up on July 3, 2018, at which time she reported she had undergone right carpal tunnel release with some relief of numbness in her hand, but still had tenderness in her palm; and right shoulder manipulation did not afford her any improvement.  (Tr. 741.)   She complained of increased arm pain and posterior cervical pain.   *Id.*   Upon examination, Stevens was unable to internally rotate her arm behind her back; she was able to forward elevate to ninety-five degrees with pain; she had significant pain on adduction to about seventy degrees; she was unable to precipitate any of her arm pain by cervical extension, rotation, or bending; and she had posterior cervical pain and tenderness at the base of her cervical spine.   *Id.*   Dr. Coyle referred Stevens for an EMG nerve conduction study to see if her arm symptoms are due to cervical radiculopathy; and referred her for nerve root blocks to relieve some of her symptoms of cervicalgia.   *Id.*   He indicated that there was "no change in her work status."   *Id.*

On March 13, 2019, Stevens presented to Dr. Robson, an orthopedic surgeon at Advanced Spine Institute, for an Independent Medical Examination ("IME") upon self-referral. (Tr. 912.) Stevens complained of neck and right shoulder pain, numbness and tingling in both hands, and low back pain with no radiation. *Id.* Stevens had undergone injections with Dr. Wayne, and had seen Dr. Coyle for a surgical opinion. *Id.* Upon examination, Stevens had tenderness to palpation of the cervical and lumbar region; cervical range of motion was decreased to ten degrees of extension and eighty degrees of flexion and rotation; she had decreased range of motion of the right shoulders; her lumbar range of motion was five degrees of extension and seventy degrees of flexion; she had full strength in the bilateral upper and lower extremities; and her straight leg raise testing was negative. (Tr. 914-15.) Dr. Robson also reviewed the medical records, including the August 2017 MRI of the cervical spine and an August 2018 MRI of the lumbar spine. (Tr. 916.) He diagnosed Stevens with C5-6 and C6-7 cervical disc protrusion with continued symptoms. *Id.* Dr. Robson found that Stevens' July 2017 work accident was the cause of her shoulder, spine, and hand symptoms. *Id.* He stated that he believed further treatment was required and that Stevens was not at the point of maximum medical improvement. *Id.* Dr. Robson found that Stevens requires a lumbar CT scan to rule out pars interarticularis defects, due to the August 2018 lumbar MRI showing spondylosis and the possibility of a pars defect at L5. (Tr. 915-16.) He further found that an updated MRI of the cervical spine was necessary in light of Stevens' persistent symptoms. *Id.* Dr. Robson stated that he would likely recommend anterior cervical diskectomy and fusion at the C5-6 and possibly also the C6-7 levels, "as her symptoms have been persistent for almost two years." *Id.* Dr. Robson ultimately stated that he "disagree[s] with Dr. Coyle's opinion and feel [her]

symptoms correlate very well with the cervical disc herniation that has not responded to conservative treatment." *Id.*

Stevens argues that the ALJ erred in relying on the opinion of Dr. Coyle and in failing to evaluate Dr. Robson's opinion and findings. The undersigned agrees.

The ALJ cited Dr. Coyle's July 2018 opinion that Stevens could return to work without restrictions. (Tr. 22.) The ALJ stated that this opinion "was supported by the examination that the claimant was able to elevate her right shoulder to about 90 degrees and had diffuse numbness in her right hand." *Id.* She continued that Dr. Coyle's opinion was also consistent with evidence that Stevens underwent carpal tunnel release surgery that relieved the numbness and tingling in her right hand and resulted in good range of motion of the wrist and hand. *Id.*

The evidence cited by the ALJ does not provide support for Dr. Coyle's opinion. With regard to Dr. Coyle's examination, the ALJ noted only that Stevens was able to elevate her shoulder to ninety degrees and had diffuse numbness in her right hand. First, it is unclear how this evidence supports an ability to perform her prior work as a nurse, which was defined by the vocational expert as medium exertional work. (Tr. 54.) Second, the ALJ omitted Dr. Coyle's other findings on examination that were supportive of Stevens' limitations. For example, Stevens was unable to internally rotate her arm behind her back; she had significant pain on adduction to about seventy degrees; she was unable to precipitate any of her arm pain by cervical extension, rotation, or bending; and she had posterior cervical pain and tenderness at the base of her cervical spine. Contrary to the ALJ's finding, Dr. Coyle's opinion that Stevens was capable of returning to her past work is not supported by Dr. Coyle's own findings on examination.

Further, the ALJ erred in discussing the consistency of Dr. Coyle's opinion with other medical evidence of record. The only evidence the ALJ cited was that Stevens' carpal tunnel

release surgery relieved her right arm and wrist symptoms.  *Id.*   The fact that Stevens' hand symptoms were relieved by surgery is not consistent with a finding that Stevens' cervical spine symptoms were alleviated to the extent she could perform medium exertional level work on a consistent basis.

Moreover, the ALJ omitted any discussion of Dr. Robson's findings.   In response to Stevens' argument that this omission was error, Defendant argues that Dr. Robson did not provide an "opinion," as the term is defined by Social Security Regulations.   A "medical opinion" is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" work-related abilities.   20 C.F.R. § 404.1513(a)(2).   Defendant accurately notes that Dr. Robson did not specifically address Stevens' work-related abilities.

Although Dr. Robson's statements do not meet the technical definition of a medical opinion, the ALJ still erred in failing to consider Dr. Robson's report.   Dr. Robson provided medical evidence that directly conflicted with the opinion of Dr. Coyle.   He specifically stated that he disagreed with Dr. Coyle's opinion and felt that Stevens' symptoms correlated "very well" with the cervical disc herniation found on the MRI and her failure to respond to conservative treatment.   Dr. Robson further found that he would likely recommend surgery with regard to Stevens' cervical disc herniation.   As such, Dr. Robson's findings are highly relevant to the analysis of whether Dr. Coyle's opinion is consistent with the medical evidence.   Under the new regulations, the ALJ must consider this factor when determining the persuasiveness of Dr. Coyle's opinion.

Dr. Robson's opinion was supported by his findings on examination.   He noted tenderness to palpation of the cervical and lumbar region, significantly reduced cervical and

lumbar range of motion, and decreased range of motion of the right shoulder. (Tr. 914-15.) These examination findings are relevant to the ALJ's RFC determination. Thus, the ALJ erred in failing to discuss Dr. Robson's findings.

Contrary to Stevens' argument, these errors were not harmless. In discounting Stevens' subjective complaints of pain, the ALJ noted that "examinations in the record generally showed no significant findings." (Tr. 18.) As discussed above, the examinations of both Drs. Coyle and Robson revealed significant findings that are supportive of Stevens' pain complaints. The ALJ's errors in evaluating the medical evidence therefore impacted the ALJ's credibility determination.

The ALJ's errors also affected her evaluation of Dr. Wayne's opinion. Stevens saw Dr. Wayne on multiple occasions from August 2017 to December 2017, upon the referral of Stevens' employer's workers' compensation carrier. On examination, Dr. Wayne consistently noted tenderness over the right lower cervical paraspinals, right upper trapezius, right upper rhomboids, and right upper shoulder region with palpation; and limited range of motion of the neck and right shoulder. (Tr. 364, 367, 371, 378, 375, 383.) He restricted Stevens to sedentary work and to working only four hours a day. (Tr. 365, 373, 376, 380.) In December 2017, Dr. Wayne noted that Dr. Coyle had expressed the opinion that Stevens was not a surgical candidate regarding her neck. (Tr. 382.) At that time, Dr. Wayne found that Stevens had plateaued regarding her neck and indicated she had no work restrictions for her neck. (Tr. 384.)

The ALJ stated that Dr. Wayne "indicated that he did not feel the claimant was a surgical candidate for her neck." (Tr. 20.) This is a misstatement. Dr. Wayne did not express an independent opinion regarding surgery, but simply re-stated *Dr. Coyle's* opinion. (Tr. 382.) Notably, Stevens reported that her neck pain was getting worse at this visit and Dr. Wayne

continued to find tenderness and limited range of motion on examination. Dr. Wayne appeared to rely upon Dr. Coyle's opinion regarding the severity of Stevens' neck impairment when he changed Stevens' work restriction from a limited range of sedentary work to "no work restrictions."

In sum, the ALJ failed to properly evaluate the persuasiveness of Dr. Coyle's opinion under the regulations. She further erred in failing to discuss Dr. Robson's findings. These errors affected the ALJ's evaluation of the opinions of Drs. Coyle and Wayne, her credibility analysis, and her RFC determination. Because these issues are dispositive, the undersigned need not consider Stevens' additional argument regarding the ALJ's evaluation of the administrative findings of Dr. O'Day.

## Conclusion

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to reevaluate the medical opinion evidence of record; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of March, 2022.